UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TRAVIS DICKERSON,

        Plaintiff,

        v.                                            Case No. 22-cv-500-bhl

MILWAUKEE COUNTY, et al.,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Travis Dickerson, who is currently in custody at the Milwaukee County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Dickerson's motion for leave to proceed without prepaying the full filing fee, motion to appoint counsel, and to screen the complaint. Dkt. Nos. 1-2, & 5.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

Dickerson has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Dickerson has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $30.00. The Court will grant Dickerson's motion for leave to proceed without prepaying the filing fee.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

At the relevant time, Dickerson was an inmate at the Milwaukee House of Corrections (HOC) who was later transferred to the Milwaukee County Jail (MCJ). Dkt. No. 1. Defendants are Milwaukee County, Milwaukee County Court Commissioner Barry Phillips, Milwaukee County District Attorneys Erin M. Karshen and John Chisholm, Milwaukee County Detective Sarah Blomme, Milwaukee County Clerk George Christenson, Milwaukee County Sherriff Earl Lucas, HOC Superintendent Chanel Jewel, HOC Captain Laird, HOC Sergeant Jump, HOC Correctional Officer Den #323, MCJ, MCJ Captain Erin Dobbson, and "Aegis" employee Ryan Anderson. *Id*.

On December 7, 2021, Jewel, Laird, and Jump placed Dickerson in segregation at HOC, pending an "investigation." *Id*. at 2 & 4. About a week later, on December 14, 2021, Dickerson was served with a search warrant to search his 2x4 metal locker for documents, paperwork, and things that were used to commit the crimes of: (1) theft, *see* Wis. Stat §934.20, and (2) unauthorized use of an individual's personal identifying information, *see* Wis. Stat §940.201(2). *Id*. at 2-3. Detective Blomme drafted an affidavit in support of the search warrant based on a "wiretap phone conversation" Dickerson had with someone while in jail; District Attorneys Karshen and Chisholm presented the search warrant; and Court Commissioner Phillips issued the search warrant. *Id*. Dickerson states that the search warrant was "illegal" because nothing was found and he was never charged with theft or the unauthorized use of an individual's personal identifying information. *Id*. Dickerson remained in segregation at HOC for 72 days. *Id*. at 4.

3

On February 16, 2022, Dickerson was transferred to MCJ after Karshen "established a no contact order with [a] family member." *Id*. CO Den #323 packed up Dickerson's belongings, but his property never made it to MCJ. *Id*. at 4-5. Dickerson includes an itemized list of all of his property that was lost between HOC, HOC segregation, and MCJ. *See id.* Dickerson sent Christenson a "notice of claim" on March 8, 2022 and Dickerson's family contacted Anderson regarding his lost property, but his property still has not been returned. *Id*. at 6. For relief, he seeks monetary damages and several injunctions. *Id*. at 6-8.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Dickerson asks to proceed with claims under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, *see* Dkt. No. 1 at 3 & 7, but the facts alleged in the complaint only implicate the Fourth and Fourteenth Amendments.

1. **Fourth Amendment: Unlawful Search**

Dickerson alleges that Commissioner Phillips, DA Karshen, DA Chisholm, Detective Blomme, Superintendent Jewel, Sgt. Jump, and Cpt. Laird violated his Fourth Amendment rights by acquiring, issuing, and/or enforcing an "illegal" search warrant. Dkt. No. 1 at 2-4. He states that the search warrant was "illegal" because nothing was found and he was never charged with a crime based on the items sought in the search warrant. *Id*. Dickerson fails to state a claim for a Fourth Amendment violation.

4

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides "no Warrants shall issue, but upon probable cause…particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A warrant is valid under the Fourth Amendment where it is based 'upon probable cause, supported by Oath or affirmation, and particularly describ[es] the place to be searched, and the persons or things to be seized.'" *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000) (quoting U.S. Const. amend. IV). A search may be unreasonable if it has been executed on a warrant obtained improperly. *See e.g. Taylor v. Hughes*, 26 F.4th 419, 426–27 (7th Cir. 2022) (discussing consequences of obtaining a warrant by presenting false statements knowingly, intentionally, or with reckless disregard for the truth).

The Seventh Circuit has long held that probable cause is analyzed with respect to what was known at the time the warrant was sought not "how things turned out in hindsight." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) (citing *Hebron v. Touhy,* 18 F.3d 421, 423 (7th Cir. 1994)). Probable cause exists if the facts and circumstances within knowledge at the time the search warrant was sought was sufficient to warrant a prudent person to believe that the suspect had committed crimes. *Id*. "The law affords 'great deference' to the probable cause finding made by the judge who evaluated the warrant application in the first instance" and a reviewing court "will uphold that determination so long as there is a 'substantial basis' for concluding 'that a search would uncover evidence of wrongdoing.'" *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1057 (7th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

Dickerson's allegations fail because he does not allege that the search warrant used to search his 2x4 metal locker lacked probable cause. In fact, to the contrary, he concedes that the search warrant was supported by an affidavit and particularly described the place to be searched

and the items sought. The fact that nothing was found pursuant to the search warrant cannot be used in hindsight to negate probable cause. Dickerson mentions that the search warrant was based on a "wiretap phone conversation," but there is nothing improper about this basis; there is no right to privacy in jail. *See Hudson v. Palmer,* 468 U.S. 517, 526 (1984) (holding that a convicted prisoner has no reasonable expectation of privacy in his prison cell entitling him to protection against unreasonable searches); *see Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995) (extending *Hudson* to pretrial detainees); *see* also *Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (overruling *Hudson* and *Johnson* "in a severely limited way" on the narrow issue of bodily privacy.) Therefore, Dickerson fails to state a Fourth Amendment claim.[1]

### 2. Fourteenth Amendment: Deprivation of Property

Dickerson alleges that CO Den #323, Milwaukee County, Dobbson, Lucas, MCJ, Jewel, Laird, Jump, CO Den #323, Karshen, Phillips, Christenson, and Anderson deprived him of his property. Dkt. No. 1 at 4-6. He also states that they were "negligent" for losing his property. *Id*. at 5. Like his Fourth Amendment allegations, these assertions are insufficient to support constitutional violations.

The Fourteenth Amendment prohibits the State from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. XVI. "[U]sually... the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). But the United States Supreme Court has drawn an exception to this general rule for "random and unauthorized" deprivations of property. *Id*. (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). A deprivation of property is "random and

---

[1] The Court notes that Court Commissioner Phillips and DAs Karshen and Chisholm would also be entitled to absolute immunity from suit under §1983 for their quintessentially judicial and prosecutorial actions. *Imbler v. Pachtman*, 424 U.S. 409, 428-32 (1976); *Agrawal v. Pallmeyer*, 313 Fed. Appx. 866 (7th Cir. 2009).

unauthorized" if it is unpredictable, meaning the State cannot predict when or if a deprivation will occur prior to the moment of deprivation. *Id*. "Random and unauthorized" deprivations of property are cured with post-deprivation remedies in state court. *Id*. When the State provides adequate post-deprivation remedies, "the requirements of due process are satisfied [,] and the plaintiff may not maintain a § 1983 suit in federal court." *Wilson v. Civil Town of Clayton, Ind*., 839 F.2d 375, 383 (7th Cir. 1988) (citing *Parratt,* 451 U.S. at 543–44).

Wis. Stat. § 968.20 governs the return of property seized through a search warrant. Once "all proceedings and investigations in which [the property] might be required have been complete," Dickerson "may apply for its return to the circuit court for the county in which the property was seized." *See* Wis. Stat. § 968.20(1)(b). Further, Wisconsin law has tort remedies for those whose property has been converted or damaged by another. *See* Wis. Stat. §893.35 (action to recover personal property); *see* Wis. Stat. §893.51 (action for wrongful taking of personal property); *see* Wis. Stat. §893.52 (action for damages for injury to property). Dickerson has adequate post-deprivation remedies under Wisconsin law; therefore he fails to state a Fourteenth Amendment claim.[2] Consequently, he also cannot procced with any supplemental state law claim regarding negligent loss of his property. The complaint fails to state a claim upon which relief can be granted, and the Court will dismiss it.

### 3. Other Claims

Dickerson also cites the First, Fifth, and Eighth Amendments, but the facts alleged in this complaint do not obviously implicate any of those constitutional provisions. District courts must generally give civil *pro se* plaintiffs at least one opportunity to amend their complaint. *See Boyd v. Bellin*, 835 F. App'x 886, 889 (7th Cir. 2021). Accordingly, the Court will give Dickerson an

---

[2] The Court notes that MCJ also is not a proper defendant. *See Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). A jail is not a "person" within the meaning of §1983, and therefore, it is a "non-suable entity." *Id*.

opportunity to file an amended complaint to attempt to state a claim under those Amendments. He should allege facts that directly implicate those Amendments. The Court is enclosing a guide for *pro se* prisoners that explains how to file an amended complaint that the Court can effectively screen. The Court also will include a blank prisoner amended complaint form. The Court will require Dickerson to use that form to file his amended complaint. *See* Civ. L. R. 9 (E.D. Wis.). If Dickerson believes he needs more space than is available in blank prisoner amended complaint form, he may attach a *maximum* of five typed, double-spaced pages. The amended complaint should be no more than <u>ten</u> pages total.

Dickerson is advised that the amended complaint must bear the docket number assigned to this case. The amended complaint replaces the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If Dickerson files an amended complaint, the Court will screen it as required by 28 U.S.C. §1915A. If Dickerson does not file an amended complaint, the Court will dismiss this case.

### MOTION TO APPOINT COUNSEL

Dickerson also filed a motion to appoint counsel. Dkt. No. 5. He states that he has limited education and no legal training; he is suffering from mental health issues and PTSD; and he can "barely read or write" and someone else is drafting his legal documents for him. *Id*.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion,

8

the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. To demonstrate he satisfied the first prong, Dickerson must show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses. In particular, the lawyers' responses may have bearing on the Court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. *Pickett*, 930 F.3d at 871. In deciding whether to recruit counsel, the Court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the case requires a lawyer who specializes in a specific area of law. *Id.* The Court should also consider how well the plaintiff articulated his case to the prospective lawyer. *Id.* Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and

9

recruit counsel. *Id.* But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." *Id.*

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Eagan*, 987 F.3d at 682. When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

For purposes of the current motion, the Court will assume that Dickerson has made reasonable attempts to recruit counsel on his own. Dkt. No. 5-1. But it is far too early in the case to tell whether the case is too complex for him to adequately represent himself. The Court does not know what claims will go forward at this point; thus, it is impossible to tell whether the claims are too complex for Dickerson to adequately represent himself. To the extent Dickerson has limited education and no legal training, he is in the same situation as most, if not all, *pro se* litigants. This is precisely why "deciding whether to recruit counsel is a difficult decision." Further, it is

unclear how his mental health issues and PTSD affects his ability to litigate this case, and there is no indication that Dickerson will not continue to receive the assistance he is currently receiving from other inmates. Dickerson chose to file this lawsuit; thus, he must at least try to litigate it himself. The Court will therefore deny Dickerson's motion to appoint counsel without prejudice. Dickerson may refile this motion at a later time if circumstances change.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Dickerson's motion for leave to proceed without prepaying the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Dickerson's motion to appoint counsel (Dkt No. 5) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED** because it fails to state a claim. Dickerson may file an amended complaint that complies with the instructions in this order by **August 22, 2022**. If Dickerson files an amended complaint by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If Dickerson does not file an amended complaint by the deadline, the Court will dismiss this case.

The Court includes with this order a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions" and a blank prisoner amended complaint form.

**IT IS FURTHER ORDERED** that the agency having custody of Dickerson shall collect from his institution trust account the **$320.00** balance of the filing fee by collecting monthly payments from Dickerson's prison trust account in an amount equal to 20% of the preceding month's income credited to Dickerson's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If

Dickerson is transferred to another institution, the transferring institution shall forward a copy of this Order along with Dickerson's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Dickerson is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on July 22, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
